FILED

2020 Nov-25  PM 03:27
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | | |
|---|---|---|
| EMPLOYERS MUTUAL CASUALTY COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Civil Action No.: |
| T & T GREEN CONSTRUCTION, INC.; DAVID LAWRENCE; and BRIAN'S CARPET & TILE, INC., | ) ) ) ) | |
| Defendants. | ) ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Employers Mutual Casualty Company ("EMC" or "Plaintiff") states

the following complaint for declaratory judgment against Defendants T&T Green

Construction, Inc. ("T&T"), David Lawrence ("Lawrence"), and Brian's Carpet &

Tile, Inc. ("BC&T"):

## NATURE OF THE ACTION

1.     This action arises out of T&T's request for defense and indemnity under

several successive policies of insurance issued to T&T by EMC (the "EMC

Policies"). T&T is seeking defense and indemnity with respect to a lawsuit pending

in the Circuit Court of Cullman County, Alabama, styled *Brian's Carpet & Tile, Inc.*

*v. T&T Green Construction Inc., David Lawrence, et al.*, CV-2020-000018, filed on February 11, 2020[1] (the "Underlying Action").

2.      This action is brought by EMC to declare the rights, obligations and liabilities of all parties in this case with respect to any and all costs that have been or will be incurred by T&T under the EMC Policies relating to the Underlying Action. Specifically, this action incudes claims by EMC against T&T for a declaration that EMC is not obligated to defend or indemnify T&T under the EMC Policies.

## PARTIES AND JURISDICTION

3.      Plaintiff EMC is a corporation organized under Iowa law, with its principal place of business located in Des Moines, Iowa.

4.      Defendant T&T is a corporation organized under Alabama law.  Its principal place of business is in Jefferson County, Alabama.

5.      Defendant David Lawrence is a resident citizen of the State of Alabama.

6.      Defendant BC&T is an Alabama corporation with its principal place of business located in Jefferson County, Alabama.

7.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as the amount in controversy exceeds $75,000 and the parties' citizenship is

---

[1] The Complaint in the Underlying Action was initially filed in the Circuit Court of Jefferson County, under Civil Action No. CV-2020-900537, but the case was transferred to the Circuit Court of Cullman County in response to the underlying defendants' motion for change of venue.

completely diverse. Plaintiff and cross-claimant in the Underlying Action are seeking more than $75,000 in damages against T&T, and T&T has sought defense and indemnity for some of those claims.[2]

8.     This Court has subject matter jurisdiction over this action for declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 and Federal Rule of Civil Procedure 57.  As more particularly described herein, an actual controversy exists within this Court's jurisdiction.

9.     Venue is proper in this Court pursuant to 28 U.S.C § 1391(b)(1) and (2), as Defendants reside in this judicial district, and the events or omissions giving rise to this claim occurred in this judicial district.

10.     Alabama follows the *lex loci contractus* rule in determining which state's law applies in a contract dispute.  *See, e.g., Cherokee Ins. Co., Inc. v. Sanches*, 975 So. 2d 287, 292 (Ala. 2007).  As the EMC Policies were issued and delivered to T&T in Jefferson County, Alabama law governs the rights and obligations created under the insurance policies issued to T&T by EMC.

## FACTUAL ALLEGATIONS

11.     T&T served as the general contractor in the construction of a private residence for Defendant Lawrence located at 2240 County Road 109 in Cullman (the

---

[2] T&T never tendered the original BC&T Complaint to EMC requesting defense and indemnity, but following EMC's notice of this claim (after the cross-claim was tendered) EMC also reviewed—and seeks a declaration of non-coverage with respect to—BC&T's claims against T&T.

"Project"). [Crossclaim of David Lawrence ("Crosscl.") ¶ 7]. Upon information and belief, T&T's construction activities started in March 2016 and continued through May 2020.

12.     T&T entered into agreements with numerous subcontractors to provide labor and materials and perform work at the Project, including Defendant BC&T. [Compl. ¶ 5-6]. BC&T worked on the Project from approximately October 2017 to September 2018, resulting in a final bill for flooring totaling, upon information and belief, approximately $190,000.

13.     BC&T filed its complaint in the Underlying Action, entitled *Brian's Carpet & Tile, Inc. v. T&T Green Construction Inc., David Lawrence, et al.*, CV-2020-900537, on February 11, 2020 in the Circuit Court of Jefferson County (the "Complaint"), claiming nonpayment for the labor and materials BC&T provided for the Project.[3]  [Compl. ¶ 7]

14.     Following a motion for change of venue, the Underlying Action was transferred to the Circuit Court of Cullman County on July 15, 2020 and assigned civil action number CV-2020-000018.

15.     BC&T claims it "completed and fully performed its work and all obligations under the Contract and directions but T&T and Lawrence have refused … to make full payment to BC&T…." [Compl. ¶ 7]

---

[3]  A true and correct copy of the Complaint is attached hereto as Exhibit A.

16.     BC&T asserts three (3) claims in the Complaint:

•     Count I, for Breach of Contract, in which BC&T seeks damages for "amounts under the Contract plus interest and costs due by breach of contract;"

•     Count II, for Collection for Goods Supplied and Services Performed, in which BC&T seeks payment for goods and services provided; and

•     Count III, for Unjust Enrichment, for which BC&T seeks payment for goods and services provided.

[Compl. ¶¶ 8-19]

17.     On August 1, 2020, Lawrence filed his Answer, along with a counterclaim against BC&T and a crossclaim against T&T (the "Crossclaim").[4]

18.     In his Crossclaim, Lawrence alleges Tom Green of T&T "represented the construction cost of the house would be between eight hundred fifty thousand ($850,000) and nine hundred fifty thousand dollars ($950,000)." [Crosscl. ¶ 7] Lawrence claims he "has paid T&T in excess of one million eight hundred thousand dollars ($1,800,000). Due to T&T's … actions and inactions Lawrence had to pay outside sources more than five hundred thousand dollars. The house is still not complete." [Crosscl. ¶ 7] Lawrence alleges Green has made ongoing fraudulent

---

[4] A true and correct copy of Lawrence's Answer and Crossclaim is attached hereto as Exhibit B.

representations regarding billing, quality of work, time to complete construction, and use of engineers to ensure the house could be built as drawn.  [Crosscl. ¶¶ 8-9]

19.    Lawrence further claims "[t]he house was not built in a workman like [sic] manner with many defects," including:

- Electrical work performed by non-licensed electricians;
- Framing that had to be replaced on at least one occasion;
- Curved crown molding in the garage area;
- Improperly located light switches and improper electrical work;
- Improperly installed doors;
- Errors in sheetrock installation;
- Wiring issues in the theater room;
- Improper beams in the dining room; and
- Improper staining and painting of wood.

[Crosscl.  ¶ 11]

20.    Lawrence also claims T&T overbilled for materials and installation and improperly installed tile and bathtubs. [Crosscl. ¶¶ 12-14]

21.    The Crossclaim includes causes of action for fraud, conversion, breach of contract, negligence, and unjust enrichment against T&T. [Crosscl. ¶¶ 16-29]

22.    Lawrence claims to have suffered damages including the loss of money spent on goods and services to remediate T&T's work and mental anguish. [Crosscl. ¶ 25] The Crossclaim seeks compensatory and punitive damages. [Crosscl. ¶ 16-29]

23.    T&T did not notify EMC of BC&T's claims in the Complaint.

24.    T&T notified EMC of the Crossclaim and sought defense and indemnity from EMC for Lawrence's claims in the Crossclaim.

25.    EMC currently is defending T&T against the claims brought in the Crossclaim under a Reservation of Rights.[5]

## THE EMC POLICIES[6]

### *The EMC CGL Policies*

26.    For the policy periods January 1, 2016 through January 1, 2021, EMC issued five successive commercial general liability ("CGL") policies to T&T (the "EMC CGL Policies"):

a.    CGL Policy 3D6-96-75-17, for the policy period January 1, 2016 to January 1, 2017 (the "2016-17 CGL Policy");

b.    CGL Policy 3D6-96-75-18, for the policy period January 1, 2017 to January 1, 2018 (the "2017-18 CGL Policy");

c.    CGL Policy 3D6-96-75-19, for the policy period January 1, 2018 to January 1, 2019 (the "2018-19 CGL Policy");

d.    CGL Policy 3D6-96-75-20, for the policy period January 1, 2019 to January 1, 2020 (the "2019-20 CGL Policy"); and

---

[5]  EMC is not defending the claims brought by BC&T. Even though BC&T's claims in the Complaint were never tendered by T&T, now that it is on notice of those claims, EMC has reviewed them for coverage and submits this Court should define EMC's coverage obligations relating to BC&T's claims in the Complaint, as well as those in Lawrence's Crossclaim.

[6]  The term "EMC Policies" refers to the EMC CGL Policies and the EMC Umbrella Policies, collectively.

e.  CGL Policy 3D6-96-75-21, for the policy period January 1, 2020 to January 1, 2021 (the "2020-21 CGL Policy").

27.  Each of the EMC CGL Policies follows ISO form CG 00 01 04 13 and includes a $1 million per occurrence limit and a $2 million general aggregate limit.[7]

28.  T&T is the named insured on each of the EMC CGL Policies.

### *The EMC CGL Policies' Insuring Agreements*

29.  The EMC CGL Policies provide coverage as follows:

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

### 1.  Insuring Agreement

a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.  But:

(1)  The amount we will pay for damages is limited as described in Section III – Limits of Insurance; and

---

[7]  The provisions and endorsements are virtually identical across EMC CGL Policies.  Policy provisions cited herein are from the 2016-17 CGL Policy, because EMC has determined that policy is the most likely to be implicated in this action.  Any meaningful deviations in other of the EMC CGL Policies will be noted if relevant. Relevant provisions and endorsements cited in this Complaint for Declaratory Judgment should be assumed to be contained in all of the EMC CGL Policies unless otherwise noted..

      (2)    Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments -- Coverages A and B.

  b.    This insurance applies to "bodily injury" and "property damage" only if:

      (1)    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

      (2)    The "bodily injury" or "property damage occurs during the policy period . . .

[ISO CG 00 01 04 13 § I]

30.     The EMC CGL Policies, by endorsement, modify the standard definition of "occurrence" to read "an accident, including continuous or repeated exposure to substantially the same general harmful conditions. However, this definition does not include any occurrence which commenced prior to the effective date of this policy." [Endorsement CG 73 15 (10-13) B. 2.]

31.     The EMC CGL Policies, by endorsement, modify the standard definition of "bodily injury" to include "bodily injury, sickness or disease sustained by a person, including mental anguish or death resulting from bodily injury, sickness or disease." [Endorsement CG 71 91(8-14) N.].

32.    The EMC CGL Policies define "property damage" as follows, in pertinent part:

> 17.    "Property damage" means:
>
> a.    Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> b.    Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it. . . .

[ISO CG 00 01 04 13 § V.17]

33.    The EMC CGL Policies contain additional Insuring Agreements for Coverages B and C for "Personal and Advertising Injury Liability" and "Medical Payments," respectively, but neither of these Insuring Agreements is implicated by the claims in the Complaint or the Crossclaim in the Underlying Action.

### *The EMC CGL Policies' Exclusions and Endorsements*

34.    The EMC CGL policies contain endorsements and exclusions that act to eliminate coverage for the claims at issue.  The following endorsements and exclusions act independently of each other, as any one of them can exclude coverage for some or all of the claims asserted.

35.    The EMC CGL Policies contain an exclusion for "Expected or Intended Injury," as modified by endorsement, which provides:

**Exclusion 2(a). Expected or Intended Injury**

This insurance does not apply to:

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

[Endorsement CG7191(8-14) A.].

36.     The EMC CGL Policies also contain an exclusion for "Contractual Liability", which provides, in pertinent part:

This insurance does not apply to:

. . .

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)**     That the insured would have in the absence of the contract or agreement; or

**(2)**     Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

[ISO CG 00 01 04 13 § I.A.2.b]

37.     Further, the EMC CGL Policies contain an exclusion for "Damage to Property," which provides, in pertinent part:

This insurance does not apply to:

. . .

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** We will pay those sums that the insured becomes legally obligated to pay as damages because of

"property damage" to personal property of others while in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

[ISO CG 00 01 04 13 § I.A.2.j]

38.    The EMC CGL Policies contain an exclusion for "Damage to your Product", which states the insurance does not apply to:

  **k.**  **Damage to Your Product**

    "Property damage" to "your product" arising out of it or any part of it.

[ISO CG 00 01 04 13 § I.A.2.k]

  39. The EMC CGL Policies contain the following exclusion for "Damage to Your Work," as modified by Endorsement, as follows, which states , in pertinent part:

  EXCLUSION L. DAMAGE TO YOUR WORK IS DELETED AND REPLACED WITH:

   l. FAULTY, DEFECTIVE OR POOR WORKMANSHIP IN YOUR WORK

   THIS INSURANCE DOES NOT APPLY TO, AND WE SHALL HAVE NO OBLIGATION TO DEFEND, INDEMNIFY OR OTHERWISE RESPOND TO, ANY CLAIM OR 'SUIT' FOR THE COST OF REPAIR, REPLACEMENT, ADJUSTMENT, REMOVAL, LOSS OF USE, INSPECTION, DISPOSAL, OR OTHERWISE MAKING GOOD ANY FAULTY, DEFECTIVE OR POOR WORKMANSHIP IN 'YOUR WORK' FOR WHICH ANY INSURED OR ANY INSURED'S EMPLOYEES, CONTRACTORS, OR SUBCONTRACTORS MAY BE LIABLE.

   THIS EXCLUSION DOES NOT INCLUDE 'PROPERTY DAMAGE' TO PROPERTY OTHER THAN THE FAULTY, DEFECTIVE OR POOR WORKMANSHIP IN 'YOUR WORK' INCLUDED IN THE 'PRODUCTS-COMPLETED OPERATIONS HAZARD' AND THE EXCLUSION DOES NOT APPLY TO 'BODILY INJURY'.

[Endorsement CG 21 34 01 87]

40.    The EMC CGL Policies define "your work" as follows:

**22**. "Your work":

**a**. Means:
   **(1)** Work or operations performed by you or on your behalf; and
   **(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b**. Includes:
   **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and
   **(2)** The providing of or failure to provide warnings or instructions.

[ISO CG 00 01 04 13 § V.22]

41.    Additionally, the EMC CGL Policies contain an "impaired property" exclusion, which provides the insurance does not apply to:

**m.      Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)**    A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)**    A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

[ISO CG 00 01 04 13 § I.A.2.m]

    42.    The EMC CGL Policies define "impaired property" as follows:

    8.    "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

    a.    It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

    b.    You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work"; or your fulfilling the terms of the contract or agreement.

[ISO CG 00 01 04 13 § V.8]

### ***The EMC Umbrella Policies***

    43.    For the policy periods spanning January 1, 2016 through January 1, 2021, EMC issued five successive umbrella policies to T&T (the "EMC Umbrella Policies"):

    a.    Umbrella Policy 3K6-96-75-17, for the policy period January 1, 2016 to January 1, 2017 (the "2016-17 Umbrella Policy");

    b.    Umbrella Policy 3K6-96-75-18, for the policy period January 1, 2017 to January 1, 2018 (the "2017-18 Umbrella Policy");

    c.     Umbrella Policy 3K6-96-75-19, for the policy period January 1, 2018 to January 1, 2019 (the "2018-19 Umbrella Policy");

    d.     Umbrella Policy 3K6-96-75-20, for the policy period January 1, 2019 to January 1, 2020 (the "2019-20 Umbrella Policy"); and

    e.     Umbrella Policy 3K6-96-75-21, for the policy period January 1, 2020 to January 1, 2021 (the "2020-21 Umbrella Policy").

44.    Each of the EMC Umbrella Policies follows ISO form CU 00 01 04 13 and includes a $1 million per occurrence limit and a $1 million general aggregate limit.  Each of the EMC Umbrella Policies cites the correlating EMC CGL Policy in its Schedule of Underlying Insurance. [8]

45.    T&T is the named insured on each of the EMC Umbrella Policies.

### *The EMC Umbrella Policies' Insuring Agreements*

46.    The EMC Umbrella Policies provide coverage as follows:

## COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

---

[8] The provisions and endorsements are virtually identical across EMC Umbrella Policies.  Policy provisions cited herein are from the 2016-17 Umbrella Policy, as EMC has determined this policy the most likely to be implicated in this action.  Any meaningful deviations in other of the EMC Umbrella Policies will be noted if relevant. Provisions and endorsements cited in this Complaint for Declaratory Judgment should be assumed to be contained in all of the EMC Umbrella Policies unless otherwise noted.

1.      **Insuring Agreement**

a.      We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking damages for such "bodily injury" or "property damage" when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted. When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may apply. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. At our discretion, we may investigate any "occurrence" that may involve this insurance and settle any resultant claim or "suit" for which we have the duty to defend. But:

(1)     The amount we will pay for the "ultimate net loss" is limited as described in Section III – Limits Of Insurance; and

(2)     Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

b.      This insurance applies to "bodily injury" or "property damage" that is subject to an applicable "retained limit". If any other limit, such as a sublimit, is specified in the "underlying insurance", this insurance does not apply to "bodily injury" or "property damage" arising out of that exposure unless that limit is specified in the Declarations under the Schedule of "underlying insurance".

c.    This insurance applies to "bodily injury" and "property damage" only if:

(1)    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2)    The "bodily injury" or "property damage" occurs during the policy period; and

(3)    Prior to the policy period, no insured listed under Paragraph 1.a. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c.    "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1.a. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

[ISO CU 00 01 04 13]

47.    The EMC Umbrella Policies define "bodily injury" as follows:

3.    "Bodily injury" means bodily injury, disability, sickness or disease sustained by a person, including death resulting

from any of these at any time. "Bodily injury" includes mental anguish or other mental injury resulting from "bodily injury".

[ISO CU 00 01 04 13 §V.3]

48.    The EMC Umbrella Policies define "property damage" as follows:

18.    "Property damage" means:

a.    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it. . . .

[ISO CU 00 01 04 13 §V.18]

49.    The EMC Umbrella Policies define "occurrence" as follows:

13.    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

[ISO CU 00 01 04 13 §V.13]

50.    The EMC Umbrella Policies contain an additional Insuring Agreement for Coverage B for "Personal and Advertising Injury Liability," but this Insuring Agreement is not implicated by the claims in the Complaint or the Crossclaim in the Underlying Action.

*The EMC Umbrella Policies' Exclusions and Endorsements*

51.     The EMC Umbrella Policies contain endorsements and exclusions that track the provisions of the EMC CGL Policies and act to eliminate coverage for the claims at issue.   The following endorsements and exclusions act independently of each other, as any one of them can exclude coverage for some or all of the claims asserted.

52.     The EMC Umbrella Policies contain an exclusion for "Expected or Intended Injury," which provides:

> This insurance does not apply to:
>
> **a. Expected or Intended Injury**
>
> "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

[ISO CU 00 01 04 13 §I.A.2.a.]

53.     The EMC Umbrella Policies also contain an exclusion for "Contractual Liability," which provides, in pertinent part:

> This insurance does not apply to:
>
> . . .
>
> **b.     Contractual Liability**
>
> "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability

in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

    **(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

    **(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

[ISO CU 00 01 04 13 § I.A.2.b]

54. Further, the EMC Umbrella Policies contain an exclusion for "Damage to Property," which provides, in pertinent part:

This insurance does not apply to:

. . .

**m.** **Damage To Property**

"Property damage" to:

**(1)** Property

(a) You own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property . . .

**(2)**     Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)**     Property loaned to you;

**(4)**     We will pay those sums that the insured becomes legally obligated to pay as damages because of "property damage" to personal property of others while in the care, custody or control of the insured;

**(5)**     That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)**     That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (1)(b)**(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

[ISO CU 00 01 04 13 § I.A.2.m]

55.    The EMC Umbrella Policies contain an exclusion for "Damage

to Your Product," which states the insurance does not apply to:

**k.    Damage to Your Product**

"Property damage" to "your product" arising out of it or
any part of it.

[ISO CU 00 01 04 13 § I.A.2.n]

56.    The EMC Umbrella Policies contain the following exclusion for

"Damage to Your Work", which states the insurance does not apply to:

**o.    Damage To Your Work**

"Property damage" to "your work" arising out of it or any
part of it and included in the "products-completed
operations hazard". This exclusion does not apply if the
damaged work or the work out of which the damage arises
was performed on your behalf by a subcontractor.

[ISO CU 00 01 04 13 § I.A.2.o]

57.    The EMC Umbrella Policies define "your work" as follows:

**22**. "Your work":

**a**. Means:

**(1)**    Work or operations performed by you or on
your behalf; and

**(2)**    Materials, parts or equipment furnished in
connection with such work or operations.

    **b**. Includes:

> **(1)**    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

> **(2)**    The providing of or failure to provide warnings or instructions.

[ISO CU 00 01 04 13 § V.28]

    58.    Additionally, the EMC Umbrella Policies contain an "impaired property" exclusion, which provides the insurance does not apply to:

> **p.**    **Damage To Impaired Property Or Property Not Physically Injured**

> "Property damage" to "impaired property" or property that has not been physically injured, arising out of:

> **(1)**    A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

> **(2)**    A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

> This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

[ISO CU 00 01 04 13 § I.A.2.p.]

    59.    The EMC Umbrella Policies define "impaired property" as follows:

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a.   It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b.   You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work"; or your fulfilling the terms of the contract or agreement.

[ISO CU 00 01 04 13 § V.8]

## COUNT I – DECLARATORY JUDGMENT

**EMC Owes No Coverage Obligations to T&T Under the EMC Policies[9] for the Claims Made by BC&T in the Complaint**

60.   EMC adopts and incorporates the allegations contained in paragraphs 1-59 as if fully set forth herein.

61.   As set forth above, the insuring agreements in the EMC CGL Policies and the EMC Umbrella Policies generally provide coverage for "bodily injury" or "property damage" arising out of an "occurrence."

62.   BC&T is not asserting any claims of "bodily injury" in its Complaint.

---

[9]   As Lawrence's Crossclaim alleges damages in excess of $1 million, and prays for compensatory and punitive damages, the demand exceeds the limits of the Underlying Insurance, therefore implicating coverage under the EMC Umbrella Policies.  As such, a justiciable controversy exists with regard not only to the EMC CGL Policies, but the EMC Umbrella Policies, as well.

63.    BC&T's claims are for the recovery of purely economic losses, which, as a matter of law, do not fall within the definition of "property damage." *See*, *e.g., Am. States Ins. Co. v. Martin*, 662 So. 2d 245, 249 (Ala. 1995) (holding that the loss of money does not qualify as "property damage").[10]

64.    In addition, BC&T's claims fall within exclusions contained in the EMC CGL Policies and the EMC Umbrella Policies.

65.    A justiciable controversy exists with regard to the rights and obligations of the parties with regard to the EMC Policies.

WHEREFORE, EMC respectfully request that the Court enter declaratory judgment as follows:

(1)    Declaring the Complaint in the Underlying Action contains no allegations of "bodily injury" or "property damage" to trigger coverage obligations under the EMC CGL and Umbrella Policies; and

(2)    Declaring the Complaint in the Underlying Action contains no allegations of a covered "occurrence" to

---

[10]   The choice of law rule followed by Alabama courts provides that the law of the state where the insurance contract was executed (*i.e.*, the place of delivery to the insured) governs questions regarding the validity and interpretation of the contract. *See Harrison v. Insurance Co. of N. America*, 294 Ala. 387, 391, 318 So. 2d 253, 257 (1975). Because the Policy was issued to the insured in Alabama, Alabama law is applicable in this action.

trigger coverage obligations under the EMC CGL and Umbrella Policies; and

(3)   Declaring the Complaint in the Underlying Action contains allegations that fall within exclusions under the EMC CGL and Umbrella Policies; and, therefore, therefore:

(4)   Declaring EMC has no duty to defend or indemnify T&T against BC&T's claims in the Complaint in the Underlying Action.

## CLAIM II – DECLARATORY JUDGMENT

### EMC Owes No Coverage Obligations to T&T with Regard to the Claims in the Crossclaim in the Underlying Action, as There is No Allegation in the Crossclaim of an "Occurrence"

66.   EMC adopts and incorporates the allegations contained in paragraphs 1-65 as if fully set forth herein.

67.   As set forth above, coverage under the insuring agreements in the EMC CGL Policies and the EMC Umbrella Policies is triggered by "bodily injury" or "property damage" arising from an "occurrence."

68.   In his Crossclaim, Lawrence alleges numerous construction defects and violations of applicable code and residential construction industry standards, including electrical work performed by non-licensed electricians, defective framing,

warped moldings, improper electrical work, improperly installed doors, errors in sheetrock installation, wiring issues, improper beam installation, improper painting, and improper installation of bathtubs and tile. [Crosscl. ¶¶ 11-14]

69.     Lawrence bases his claim of Negligence (Count 4) on T&T's failure to construct the house in a workmanlike manner, as evidenced by the construction defects enumerated above. [Crosscl. ¶¶ 24-26]

70.     Faulty workmanship itself is not an "occurrence" under Alabama law. *See Town & Country Property, LLC v. Amerisure Ins. Co.,* 11 So. 3d 699 (Ala. 2011). Because the negligence claim arises out of damage to the home being constructed itself—as opposed to damage to affixed personal property or to a structure that existed before the construction started—the negligence claim based on faulty workmanship does not describe an "occurrence." *See Employers Mut. Cas. Co. v. Smith Const. & Dev., LLC*, 949 F. Supp. 2d 1159, 1172 (N.D. Ala. 2013).

71.     Lawrence's Crossclaim also outlines claims of Fraud (Count 1) and Breach of Contract (Count 3). [Crosscl. ¶¶ 16-18, 22-23]

72.     Fraud and breach of contract claims do not arise from an "occurrence." *See, e.g., Employers Mut. Cas. Co. v. Smith Const. & Dev., LLC*, 949 F. Supp. 2d 1159, 1173 (N.D. Ala. 2013) (plaintiffs "allege that [defendants] breached their agreement 'by failing to complete construction of the home in a good and workmanlike manner in accordance with all construction standards, applicable

building codes, and terms of the contract.' This accusation resembles [a] faulty workmanship claim…. It is not an allegation that is particularly unusual or that could not have been reasonably anticipated when the parties formed the contract.'"); *Thorn v. American States Ins. Co.,* 266 F. Supp. 2d 1346, 1352 (M.D. Ala. 2002); *U.S. Fidelity & Guar. Co. v. Warwick Development Co., Inc*., 446 So. 2d 1021, 1023 (Ala. 1984) ("We cannot agree with the argument set forth … that 'a reliance upon the misrepresentations' … constitutes an occurrence within the language of the policy").

73.     Lawrence's Crossclaims also sets out claims of Conversion (Count 2) and Unjust Enrichment (Count 5). [Crosscl. ¶¶ 19-21, 26-29]

74.     Lawrence's claims for conversion and unjust enrichment do not describe an "occurrence" because they do not arise out of accidental or fortuitous conduct. *See, e.g., State Farm & Cas. Co. v. Myrick*, 611 F. Supp. 2d 1287 (M.D. Ala. 2009) (insureds' alleged conversion of disabled aunt's funds was not "accident," and thus insurer had no obligation under personal liability umbrella policy to indemnify claims that insureds settled in state court, even though insureds purportedly did not have wrongful intent); *Monroe Guaranty Insurance Company v. Pinnacle Manufacturing, LLC*, 2018 WL 3352656 at *5 (N.D. Ala. July 9, 2018) (no allegation of "occurrence" in underlying suit claiming intentional interference, suppression, wantonness, unjust enrichment, open account, and breach of contract arising out of termination of sales agent).

75.     An actual and justiciable controversy exists with regard to the rights and obligations of the parties to the EMC Policies and the claimants.

WHEREFORE, EMC respectfully requests that the Court enter declaratory judgment as follows:

(1)     Declaring the Crossclaim in the Underlying Action contains no allegations of an "occurrence" to trigger coverage obligations under the EMC CGL Policies; and

(2)     Declaring the Crossclaim in the Underlying Action contains no allegations of an "occurrence" to trigger coverage obligations under the EMC Umbrella Policies; and, therefore:

(3)     Declaring EMC owes no defense or indemnity to T&T with regard to Lawrence's crossclaims in the Underlying Action.

## CLAIM III – DECLARATORY JUDGMENT

**EMC Owes No Coverage Obligations to T&T with Regard to the Claims in the Crossclaim in the Underlying Action, as There are No Allegations in the Crossclaim of "Bodily Injury" or "Property Damage"**

76.     EMC adopts and incorporates the allegations contained in paragraphs 1-75 as if fully set forth herein.

31

77.     As set forth above, coverage under the insuring agreements in the EMC CGL Policies and the EMC Umbrella Policies is triggered by "bodily injury" or "property damage" arising from an "occurrence."

78.     In his Crossclaim, Lawrence alleges the actions of T&T caused him mental anguish.  [Crosscl. ¶¶ 18, 21, 23, 25]

79.     In his Crossclaim, Lawrence alleges numerous construction defects and violations of applicable code and residential construction industry standards, including electrical work performed by non-licensed electricians, defective framing, warped moldings, improper electrical work, improperly installed doors, errors in sheetrock installation, wiring issues, improper beam installation, improper painting, and improper installation of bathtubs and tile.  [Crosscl. ¶¶ 11-14]

80.     In his Crossclaim, Lawrence alleges damages consisting of economic harm such as "spending money on goods and/or services" [Crosscl. ¶ 18], "lost money" [Crosscl. ¶ 21], and the "loss of spending money" [Crosscl. ¶ ¶ 23, 25].

81.     The CGL Policies define "bodily injury," as set forth above, to include mental anguish only to the extent that the mental anguish results from bodily injury. [*See* Endorsement CG 71 91(8-14) N, ISO CU 00 01 04 13 §V.3]

82.     Under Alabama law "property damage" includes damage to the property of others, not property damage to the insured's property, work, or product. *See, e.g., USF&G v. Bonitz Insulation Co.,* 424 So. 2d 569 (Ala. 1982).  Rather, only

when an "occurrence" or accident causes damage to some other property than the insured's product, does that constitute an "occurrence" of "property damage." *Id.*

83.  Claims for the recovery of purely economic losses, as a matter of law, do not fall within the definition of "property damage." *See Am. States Ins. Co. v. Martin*, 662 So. 2d 245, 249 (Ala. 1995) (holding the loss of money does not qualify as "property damage").

84.  An actual and justiciable controversy exists with regard to the rights and obligations of the parties to the EMC Policies and the claimants.

WHEREFORE, EMC respectfully requests the Court enter declaratory judgment as follows:

(1)  Declaring the Crossclaim in the Underlying Action contains no allegations of "bodily injury" or "property damage" to trigger coverage obligations under the EMC CGL Policies; and

(2)  Declaring the Crossclaim in the Underlying Action contains no allegations of "bodily injury" or "property damage" to trigger coverage obligations under the EMC Umbrella Policies; and, therefore:

(3)    Declaring EMC owes defense or indemnity to T&T with regard to Lawrence's claims in the Crossclaim in the Underlying Action.

## CLAIM IV – DECLARATORY JUDGMENT

**EMC Owes No Coverage Obligations to T&T with Regard to the Claims in the Crossclaim in the Underlying Action, as Exclusions in the Policies Act to Remove the Claims from Coverage**

85.    EMC adopts and incorporates the allegations contained in paragraphs 1-84 as if fully set forth herein.

86.    Although EMC contends no coverage exists under the EMC Policies as the Crossclaim fails to allege covered "bodily injury" or "property damage" caused by an "occurrence," several exclusions in the EMC Policies operate to remove Lawrence's Crossclaim from coverage.

87.    Most notably, the EMC CGL Policies contain a "Damage to Your Work" exclusion, quoted above, that removes from coverage all claims or suits seeking the cost of repairs, replacement, adjustment, removal, loss of use, inspection, disposal, or otherwise making good any faulty, defective, or poor workmanship in "your work," including the work done on T&T's behalf by subcontractors. All of Lawrence's crossclaims arise from faulty or incomplete workmanship by T&T and its subcontractors, and thus fall squarely within this exclusion. Therefore, the

crossclaims are removed from the coverage of the EMC CGL Policies by this exclusion.

88.     As outlined above, the EMC Policies contain exclusions for "Expected or Intended Injury" [Endorsement CG7191(8-14) A; ISO CU 00 01 04 13 §I.A.2.a.], which would operate to remove coverage for Lawrence's claims of fraud, conversion, and breach of contract, as these claims are based on alleged intentional acts by T&T.

89.     Further, the EMC Policies contain exclusions for "Contractual Liability" [ISO CG 00 01 04 13 § I.A.2.b; ISO CU 00 01 04 13 § I.A.2.b].  This exclusion acts to remove from coverage Lawrence's claim of breach of contract.

90.     Moreover, the EMC Policies contain exclusions for "Damage to Property," removing coverage for "property damage" to: "[t]hat particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or "[t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it." [ISO CG 00 01 04 13 § I.A.2.j; ISO CU 00 01 04 13 § I.A.2.m]. These exclusions operate to remove from coverage any damages alleged while T&T was working on the property or damage for alleged defective workmanship.

91.    An actual and justiciable controversy exists with regard to the rights and obligations of the parties to the EMC Policies and the claimants.

WHEREFORE, EMC respectfully requests that the Court enter declaratory judgment as follows:

(1)    Declaring the exclusions in the EMC CGL Policies operate to remove coverage for Lawrence's crossclaims; and

(2)    Declaring the exclusions in the EMC Umbrella Policies operate to remove coverage for Lawrence's crossclaims; and, therefore:

(3)    Declaring EMC owes no coverage obligations to T&T with regard to Lawrence's crossclaims in the Underlying Action.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the following relief:

A.    A declaration that EMC owes no defense or indemnity to T&T with regard to the claims made by BC&T in the Complaint in the Underlying Action;

B.    A declaration that EMC owes no defense or indemnity to T&T with regards to the crossclaims made by Lawrence in the Crossclaim in the Underlying Action, as:

(1)    There are no allegations of an "occurrence" in the Crossclaim; or, in the alternative,

(2)    There are no allegations of "bodily injury" or "property damage" in the Crossclaim; or, in the alternative,

(3)    Coverage for any claims of "bodily injury" or "property damage" arising from an "occurrence" is removed by operation of the numerous exclusions in the EMC Policies;

and

C.    That the Court enter such other, further, or different relief to which Plaintiff may be entitled.

Respectfully submitted,

*s/ R. Bruce Barze, Jr.*
R. Bruce Barze, Jr.
One of the Attorneys for Plaintiff
Employers Mutual Casualty Company

**OF COUNSEL:**

R. Bruce Barze, Jr. (asb-8163-R71R)
Margaret S. Kubiszyn (asb-3009-N68M)
BARZE TAYLOR NOLES LOWTHER, LLC
2204 Lakeshore Drive, Suite 330
Birmingham, AL  35209
(205) 872-1032
bbarze@btnllaw.com
mkubiszyn@btnllaw.com

PLEASE SERVE DEFENDANTS VIA CERTIFIED MAIL AS FOLLOWS:

BRIAN'S CARPET & TILE, INC.
1829 13th Avenue North
Bessemer, AL 35020

T&T GREEN CONSTRUCTION, INC.
5900 Swann Road
Mount Olive, AL 35117

MR. DAVID LAWRENCE
2250 County Road 109
Cullman, AL 35057